Your Honor, the first case of the morning call, 2-12-10-04, people say the only writer is Deborah Johnson. On behalf of the attorney, Mr. Charles W. Hoffman, on behalf of the people, Mr. J. Paul Hoffman. It's the Hoffman Day. So I can't say Mr. Hoffman, I'll say Mr. Charles Hoffman. Are you ready? I am. Can you make your style and approach? Thank you, Justice. For the record, my name is Charles Hoffman, 1-N. I represent the appellant in this case, Edward Johnson, who was convicted of the aggravated criminal sexual assault and the murder of a woman referred to in the briefs as VF. He was sentenced to 50 years and life without parole. I had planned to argue issues 1 and 3 in our brief this morning in that order, but I know the court has expressed interest in issue 3, pursuant to its order last week. That issue involves section 115-7.3. I'd be happy to switch the order of the court. Well, let me ask you this. If 115-7.3, the way the prosecution sets out, if they're correct, then do some of the other issues go by the wayside? I.e. ineffective assistance, error on behalf of the court, and if not, why? I think if the state is correct that the instruction was proper, then I don't see how trial counsel could be ineffective for submitting that instruction and not objecting to the state's instruction. However, our position is the state isn't correct. Why not? For several reasons. First of all, the statute as originally enacted is an abrogation of the common law, and the Supreme Court in Donahoe looked at the statute, and because it's an abrogation of the common law, it has to be very narrowly construed in favor of defendants. And the Illinois Supreme Court looked at the legislative history, and more specifically, they cited Senator Redondo, who said this legislation, which is unique to sex offenders, recognizes the propensity of sex offenders to repeat their crimes. And the Illinois Supreme Court in Donahoe said this statute is limited to propensity to commit sex offenses. Otherwise, it would swallow the common law rule if it's admissible for propensity to commit any crime or other crimes. And our position is that when the legislature amended the statute in 2009, they expanded the types of cases, the types of charges in which such evidence would be allowed, but not the purpose for which that evidence could be considered. Well, assuming that's true, that argument is accurate, isn't there a case law, however, that says if the instruction is properly given for propensity evidence in the context of the case, even though it might have been overly broad with regard to the other purposes, it's not necessarily reversible error? Well... And isn't that what the Spires case says? It does, but I think, well, we have the mirror of Spires. In Spires, there was one improper purpose and a number of proper purposes. Here, we have a number of improper purposes, and I believe that's issue three in her brief, and only one proper purpose. So it's the flip side of Spires. So we don't think Spires controls. We think the cases that control are Brown and Lenly, which we cited. Is any proper purpose enough if there is a proper purpose as opposed to several improper? I don't think so, Justice Spence, because as the court said in Lenly and in Brown, limiting instructions are what guides the jury's consideration of the evidence. And in Brown, I believe, the word only was left out of a limiting instruction. It said to the jurors, you can consider the evidence for purpose A, B, and C. It didn't say only A, B, and C. And the appellate court said, that's improper. That's an error because it didn't properly limit the juror's consideration. And in this case, we have propensity. And our position is propensity pretty much trumps everything. Right. Propensity is the most prejudicial purpose for which evidence can be admitted. And that's why, under the common law, you couldn't put in evidence for propensity for anything. The legislature passed a limited exception. And I think what's important to remember is, in 2003 in Donahoe, the Illinois Supreme Court said, limited to propensity to commit sexual assaults. In 2009, it's amended. And the legislative history, which is not in our briefs, but because the state filed a subsequent pleading, and I spoke with Mr. Huffman about this, and I asked the court's permission to reference some brief legislative history of the amendment. Representative Mendoza said, we're not creating a new category here. We're simply adding a few more very serious offenses to be admissible as evidence of defendant's prior conduct. They're not expanding the purposes. And I think what's even more important is that in 2011, two years after this amendment was passed, the Illinois Supreme Court decided ward. And in ward, the court reaffirmed Donahoe. Evidence is admitted under this exception for propensity of a defendant to commit sex offenses. Not murder. They expanded it to include cases which involve murder involving a sexual assault. But they didn't say it was admissible to show the defendant's propensity to commit murder. And Justice Shostak, even assuming that the state's correct, I don't think their argument applies in this particular case for two reasons. First of all, there's a relevancy requirement to 115-7.3. How is Mr. Johnson's commission of prior aggravated criminal sexual assaults relevant to show his propensity to commit murder? Well, how about his propensity to use violence against women who he's involved in sexual activity with? I don't think... Because doesn't the statute also talks about accused of battery, aggravated battery, first degree murder, second degree murder. It's aggravated battery or battery involving sexual penetration or conduct.  Right. So it's relevant to show a defendant's propensity. If I've never committed a murder, how can one of my prior crimes be relevant to show my propensity to commit murder? Maybe violence, but not murder. And in addition to that, I think it's important in this particular case, no matter how this court decides whether the state's argument is correct or not on the law, on the facts of this case, the state simply never asked that the prior crimes here be admitted on the basis to show the defendant's propensity to commit murder. They only asked in their motion that it be admitted to show the defendant's propensity for aggravated criminal sexual assault. And I think it's really unfair after the trial's over and we're on appeal to say, wait a minute, that could have been admitted to show his propensity to commit murder when it wasn't. But then the state argues in their brief that the jurors could easily distinguish as to what the propensity evidence came in for because in closing argument, the prosecutor argued the propensity to commit a sex offense based on these prior sex offenses. They didn't argue in the closing argument the propensity to commit murder. So wouldn't the jurors be able to distinguish in the jury instruction what crime they were talking about? I think for two reasons. In this case, they couldn't. And here's why. First of all, the jurors were also given a proper instruction. They were told as to the assault on BK, which Mr. Johnson pled guilty to and was convicted, that assault could be considered on his propensity to commit sexual assaults. The improper instruction said propensity to commit the crime. So put yourself in the place of the jurors. One instruction says propensity to commit aggravated criminal sexual assault. The other instruction says propensity to commit the crime. I think lay people on the jury would interpret that, well, the crime is the rape murder. So this instruction tells us something different. And also, I think it's important, even though the state didn't argue it, the jurors were also instructed, as all juries are, they were told by the trial judge, the law that you are to apply in this case is stated in these instructions. So even though the state didn't argue it, I think the judge basically told the jurors, by these conflicting instructions, you can consider it on aggravated sexual assault propensity and propensity to commit the crime, which lay people, I think, would interpret as both. So I don't think the fact that the state didn't argue it negates the prejudice that occurred in this case. Is it limiting instruction at the time the evidence comes in? Is that constitutionally required? It's not, but actually it was given in this case, and it was improper. So these jurors were repeatedly told propensity to commit the crime, propensity to commit the crime, all during the trial, at defense counsel's request. And we're arguing that was ineffective. Defense counsel should not have allowed these jurors to be instructed they could consider propensity to commit the crime because they would undoubtedly interpret that as they could go in the jury room and say... There certainly is that risk of danger. I think, you know, your argument has a logical superficial appeal to it. But we have a situation, you said this was the opposite of Spires, in terms of... It's the flip side, correct. Do you have any case law that says that, you know, giving instructions such as this where there is one improper purpose is enough to mandate reversal? Well, we've cited Brown, which I mentioned before, in which the word only was excluded. And we've cited Lendley, which talks about the importance of limiting instructions being specific. I don't have a case that is on all four with this on the facts. But I think, again, what colors this case is that what's at issue here is propensity. If a juror is wrongly instructed on intent, or motive, or identity, and that's the only improper one, I think a court can say, well, it came in for a lot of proper purposes. So this one improper purpose, that didn't really tip the balance with the jury. How about Michelson versus the United States? How about that case? I'm not familiar with that case. Well, propensity evidence, they say, is highly relevant, making other crimes evidence admissible to show a defendant's propensity to commit sex crimes. Yes, that's the case, I believe, that the Illinois Supreme Court cited in Donahoe. And again, it's propensity to commit sex offenses. And if you look at what the Illinois Supreme Court relied on in Donahoe, in Senator Radonyo's testimony, she talked about the fact that sex offenders are repeaters. It's peculiar to sex offenses. And when the Illinois Supreme Court decided Donahoe, they explicitly said, in light of its legislative history, you find the legislature enacted section 117 to enable courts to make evidence of other crimes to show defendants' propensity to commit sex offenses. So I think the fact that the statute is an abrogation of the common law, it has to be narrowly construed. The fact that Mr. Johnson's prior crimes had nothing to do with murder means that the relevancy requirement of 115.7.3 simply is not met in this case. So how should the jury have been instructed, then, in this case? The jury should be- You conceded that for sex crimes, the statute allows evidence of propensity. And the jurors were given a proper instruction by the state as to the BK assault. Okay. Mr. Johnson has been convicted of a prior crime, a prior sexual assault. You can consider that for his propensity to commit sexual assaults. Absolutely fine. If you look at the IPI instruction, 3.14, it has the typical and long-standing exceptions, intent, motive- Not for motus operandi, obviously. Yes, and a blank. In the blank, you put aggravated criminal sexual assault. In this case, you don't put murder because the prior crimes had nothing to do with murder. No relevancy violated the relevancy requirement of 115.7.3. And again, as I mentioned before, most importantly, it really would be unfair to say that this was admissible to show Mr. Johnson's propensity to commit murder, first-degree murder, when the state never asked at trial that it be admitted for that purpose, and the judge never ruled that it was admitted for that purpose. How can now, after this trial on appeal, we say, well, that's fine? It seems to me that's very unfair. Maybe on the law, the state is right, but on this case, the outcome can't be that. Because that would be entirely unfair to Mr. Johnson, after the fact, to say, well, it could have been admitted for that. We know the state didn't ask for it. The judge didn't allow it. So unless the court has any further questions on that issue, we ask that you find that counsel was ineffective for submitting an improper instruction and for not objecting to the state's improper instruction. And we ask that you would reverse Mr. Johnson's convictions and remand this case for a new trial. What's the standard of review? Does it abuse of discretion have? Well, because we've raised it as ineffective assistance, the standard overview is de novo. Are you done with your argument? I'm done with my argument on the first. Unless the court has any more questions on this issue. Let's talk about the rape shield issue. Is that issue one, I believe? That's one. Yeah. Okay. Does the motion in limine equate to sex with a stranger? Is that what the motion in limine was about? The motion in limine was to exclude testimony of Nurse Wagner, who was a nurse at VF's husband's nursing home, who wrote a report or told the police that VF acted sexually inappropriate in the building. She had the habit of lifting her legs onto furniture and running, acting inappropriately in front of strangers while talking sexually inappropriately. The state said that can't come in under the rape shield law. That goes to her prior sexual activity and reputation. And the judge agreed. And we have no problem with the state's motion or the judge's ruling. What we do have a problem with is in rebuttal argument, in rebuttal to the consent defense here, the prosecutor telling the jurors reject the consent defense in this case because common sense dictates that a woman like VF, a married middle-aged woman, would never have consensual sex with a stranger like Edward Johnson. So you're saying that the acts that she, or the behavior that she exhibited in the nursing home equals sex with a stranger? I'm not saying... So if she had flirtatious behavior, therefore, she would have been sexually active with a stranger? Well, Justice Shostak, if it had only been flirtatious behavior, it wouldn't have been excludable under the rape shield act. You know, on appeal, the state is saying, well, this is just flirtatious. This has nothing to do with her sexual activity or reputation. Well, does it? Well, they said the exact opposite in the trial court. That was the... The prosecutor argued to the trial judge, this is excludable because it goes to her sexual activity or reputation. That... We didn't say that in the trial court. The state said that. But regardless of who said it, how is... So I hate to bring it down to everyday life, but sometimes women may be flirtatious or, you know, maybe a little bit inappropriate. Does that mean... Does that equate to be willing to have sex with a stranger? I don't think it equates, but I don't think it has to equate. I think the question is, is it relevant to that question? Does it raise a reasonable inference? Look what we have here. A nurse who says this woman acted sexually inappropriately around strangers. The defense in this case is she consented to have sex with a stranger. I think that the evidence doesn't have to equate. It just has to raise a reasonable inference. I'm having the same disconnect here. How does flirtatious, arguably provocative behavior equal sexual activity under the rape shield statute? Is it a question of degrees? I think it's a question of degree and inference. The fact that this woman would act sexually inappropriately around strangers, the jurors could consider that, assuming that it was admissible. I think it's relevant to, is she a person who might have an inclination to have sex with strangers? It's relevant to that. It goes to that. A prostitute is somebody who's willing to have sex with a stranger, but she can't be raped, can she? A prostitute can be raped. Sure. So even if this woman were talking sexually inappropriate, I mean, again, I'm having a problem on how her behavior can equate to, I guess you're looking at it for consent. The defense was looking to show, thinking if they brought this in, that it can show consent, or that she was... We're not arguing it was admissible. This is a prosecutorial misconduct issue. We're arguing the state can't keep evidence out... And then use it as a sword. And then use the rape shield statute here as a sword. They can't argue to the jury to reach a conclusion that could have been rebutted by evidence they excluded. So they can't have it both ways. Exactly. And that makes some sense. But let me ask you this. When we look at this case on appeal, as you know, we could affirm on any basis. In my mind, I think the motion could have been granted improperly, but I think it was probably irrelevant on either side. I don't think that this rose to sexual behavior activity to me within the meaning of the statute to begin with. I might have excluded it as a prejudice. It's completely irrelevant to anything. You can't use it, and you can't use it either. You just can't even bring it up. And had that happened, that would have been fine. We don't have a complaint. But as you characterized it, Justice Hudson, the state wants it both ways. It boils down to this. Don't let the defense put in evidence that this woman acted sexually inappropriately around strangers. But let us argue that this woman, this married middle-aged woman, would never consent to have sex with a stranger. Did he say that? What was the actual argument? This doesn't make any sense. She would do this. What did he actually say to people? She said, and how do we know that this defendant didn't have consensual sex with VF? Well, the defense called her friend here to testify, and she talked about VF and that she was married, and she kept her hair immaculate, her makeup immaculate. There's no evidence she knew this defendant at all. And yet the defense wants you to believe that on one random night, she just goes out and decides to have sexual intercourse with a stranger. Doesn't make sense. I think this prosecutor was asking this jury to reach a conclusion that could have been rebutted by evidence that would have raised a reasonable inference that this woman behaved in a manner that the jury could find she had an inclination or a predilection to act sexually inappropriately around strangers. So the acting inappropriately around strangers, then how would you, I guess I'm trying to figure out if I'm in the defense case, what I would do, I guess your defense was, yeah, I had sex with her on the porch, but then I didn't kill her. That was the defense. Now, whether the jury would accept that defense or not, it is up to them. But what happened here is the prosecutor improperly and completely undermined that defense. These jurors went back there and said, you know, that prosecutor's right. This middle-aged married woman, would she never have sex with a total stranger? How ludicrous is that? Well, what if they knew she acted sexually inappropriately specifically around strangers? What about the context of this? Didn't this take, wasn't she found on a porch outside? She was. Didn't she live a few blocks from the scene of the crime? She did. Doesn't the context, so why wouldn't she be at home? Why would she be on a porch if this was some consensual activity? I cannot answer that question. She was found on the porch. I mean, her psychological profile wasn't part of the evidence in this case. I think the prosecutor argued, you know, the prosecution could have argued, why would this woman have consent to have sex on a porch? That's fine. Why would this woman consent to have sex three blocks from her house? That's fine. But they specifically argued that about her character, this married middle-aged woman would never have sex with a stranger. They put her character at issue when before trial, they moved to keep evidence of her character, their words, out of evidence. So because she talked dirty to the people in the nursing home, you're saying that leads to a logical conclusion that she may have consented to sex with strangers. I'm saying that had the jurors knew that she acted, and these are Nurse Wagner's words, not me, she didn't say flirtatious. She said acted sexually inappropriately around strangers. If the jurors had known that, they may have not rejected the consent defense. That's a conclusion. Do we have more of a factual basis of what it was? She was saying or what she meant when she said sexually inappropriate. This is what we have. And I can tell you that elsewhere in the record, but not in my briefs, and if I can mention it because it's in the record, she touched herself inappropriately in front of strangers. I mean, you know, the state was very clear pre-trial. This goes to her sexual activity and reputation. And, you know, maybe Justice Hudson of the Court should have said, well, I'm not going to exclude this on the rape shield statute. It's irrelevant. Now, you cite three cases. You cite, I think it's Harris, Suka, and the Badgett case. Correct. With respect to that. Those cases certainly can be distinguishable, can't they? I mean, they commented directly on matters that had been excluded. I mean, I think it was on the Badgett case, and they say the girl had zero sexual experience, and she was previously married. Yeah, that was Suka from Hawaii, and they did say, you know, and it's very similar to what Justice Hudson brought up. In that case, the prosecutor excluded evidence of any prior sexual activity by the victim. And then in closing argument, they said, look at these photos of the mattress defendant took her to. Is this a place where a girl age of 14 would go to have her first sexual experience? Well, the appellate court held that was error because the state had, there was no evidence that this was her first sexual experience because that's what the prosecutor kept out. So we don't know what evidence was kept out in Suka. And I agree, Justice Shostak, the link is more direct in the cases we've cited. They go to, you know, whether this girl, that was her first sexual experience. In the Harris case, it goes to whether the complainant was a prostitute or not, which the state kept out, and then argued she wasn't a prostitute. But I think there's enough of a link here, an evidentiary link. If you look enough to raise a reasonable inference that this woman may be more inclined than the average person to have consensual sex with a stranger. And by arguing to the jury that this particular woman would never do that, the prosecutor undermined the consent defense by arguing something that she knew could have been rebutted by evidence that she excluded herself. For that reason, we think the trial was unfair. And Mr. Johnson is entitled to a new trial. And is my time up? Your time is up. And you will have an opportunity in rebuttal. The only thing we didn't address with you, I think, was the cross-examination of Lori. If you want to talk about that when we come back up otherwise. No, that's fine. Thank you for your time. Thank you. Mr. Hoff. Good morning, Your Honors. Good morning, Mr. Hoffman. May it please the Court, I am Jay Hoffman from the Office of the Appellate Prosecutor. And it's my pleasure, as always, to represent the people of the state of Illinois before the ceremonial court. I didn't hear your last point to counsel about what he didn't have time for. He didn't address the cross-examination of Lori. But with you, we're going to start where you wanted us to start. And I'm going to ask you to talk to us about the Bohan case. I believe that that was cited. It was the instruction about the offenses, whether or not they're linked to the actual charge. For instance, you're asking us to cite additional authority the new statute. Talk to us about that. How is it, counsel is saying, it's not linked to the specific offense. Does the new, under 2009-1-1573, does it have to link to the specific offense? In other words, does the other crimes evidence have to be linked to the murder? Or is it being linked to the sexual assault enough to give the instruction of other crimes evidence? Well, let me answer that by reading the statute. The statute, of course, is the best place to start. We know that you start with the plain language of the statute. And I will also get into the comments of Representative Mendoza. And as I discussed with Mr. Huffman yesterday, I'm going to also talk about Senator Kartowski, who sponsored this Senate bill in the Senate. But first, let's look at the statute. And remember, when you talk about Donahoe, at the time Donahoe was come down, counsel says, well, Donahoe talked about just for sexual purposes, just its admissible propensity. And really, it says, the statute says, of course, for any purpose to which it's relevant. And this court noted that in Perez and Boyd and I think Walston. This court made it clear that when things come in under this statute, it's a little different than at the common law because it comes in for any purpose. The statute lists in A, it lists the three types of crimes. First of all, criminal sexual assault, criminal sexual abuse, child pornography, et cetera, et cetera, which it said originally, the sex cases. Then it lists out in section A2, if the defendant is accused of battery, aggravated battery, first degree murder, or second degree murder, when the commission of the offense involves sexual penetration or sexual conduct. And I think that's something that my opposing counsel didn't point out. He keeps saying, well, he didn't have a past murder. He didn't have a past murder. We're not just talking about murder. First of all, they amended the statute and put in battery and aggravated battery where they had a sexual component. And then in this amendment we're talking about, they added murder and second degree murder, which has a second degree component. So what you're saying is section A2, 2 that was added in 09, it just says that if the murder was based or was linked or somehow related to a sexual assault, that other crime's evidence of the other sex crime can come in to show propensity to commit murder. Exactly what I'm saying is this. You have section A, which lists the type of crimes that the person is charged of. The defendant is accused of predatory criminal sexual assault, et cetera. And one, defendant is accused of battery, agbat, murder, second degree murder in two. And then three is the section they're talking about because there were problems originally on the statute because it used to be called rape. And people were saying, well, you can't do it in a sexual assault case because they raped before. That goes to that. But then look at B, and this is the crucial language. Section B says, if the defendant is accused of an offense set forth in paragraph one or two or of three, evidence of the defendant's commission of another offense or offenses set forth in one, two, or three may be considered for its bearing on any matter to which it is relevant. In other words, if you are accused of any of these triggering offenses, then evidence of any of these triggering offenses can be admitted. And so in other words, where there's a sexual proponent, justice, et cetera, linked to the crime charge, it would come in. In other words, to rebut his argument, if the victim had been shot and there had been no evidence of any type of sexual conduct, that statute couldn't be used, could it? That's correct, Your Honor. It's the linkage. The connection is, if somebody is charged with a criminal sexual assault and murder, the prior criminal sexual history would come in to prove up the murder because it was linked as part of the commission of the offense. If the person's run over by a car, it would never come in, correct? Correct. So you're saying he's ignoring the fact that there's a threshold connection there. If he had never been accused of any sexual activity with the victim, none of that would have come in. That's correct. And let me say the reverse is true also, Your Honor. As I said, B teaches that if you're accused of any of the triggering offenses, then any of the triggering offenses can come in. And he passed evidence of those. So even if you were accused here of sexual assault and there was a prior murder which you were convicted of or commuted with a sexual component, that could come in to prove the propensity of your sexual assault. And here there was obviously evidence that there was, he said it was potential sex. But it's not disputed that they had sexual intercourse, correct? Nobody in this case disputed that. Nobody in this case disputed that because as was the semen on the shirt of one of the women he raped and he says he had consensual sex with for money that he didn't then pay her. The vaginal and the anal swab of the victim here pointed to him, the African-American person, one in, I think it was 71 quadrillion. So there's absolutely no doubt. Which brings about an important point which really goes to the section one argument or the first argument. But I'll bring it up here because it touches somewhat. Remember that his alibi defense, which isn't really even an alibi. He doesn't get anyone to say, oh, I was here at that time. He's saying, well, yeah, I was somewhere in Rockville. But I wasn't there. Did he formally raise it as an alibi defense? He raises it as an alibi defense very shortly before trial. And they are even some alibis. Both the alibi defense and the consent defense. The consent defense was not raised until late. And it was not raised until after all of the people's motions in Limine, including the one with regard to the evidence which they say we now pointed to, although we kept it out. But at the time, we moved to keep out this evidence of, and we're trying to figure out in my office what it means that she was running. You know, how does that, is that any sexual comment? So it's like, you know, she's chasing people around saying, but at that time, there was no consent defense. That wasn't raised until after. And just briefly, again, with regard to, although we would say you don't have to go to the legislative history because the language is plain. And counsel's correct. Senator Mendoza did say on May 28, 08, when the final vote was taken on the Senate bill before the House, we're not creating a new category here. We're simply adding a few more very serious, serious offenses to be allowed to be admissible as evidence of defendant's prior conduct. I don't know how that helps his case. But if you go up earlier in that and look at it, she said, ladies and gentlemen, the House Senate bill 2509, adds offenses for which evidence of a defendant's prior conduct may be admitted in a trial. Well, that's what it does. It adds offenses for which the evidence may be admitted. And Senator Kutowski said very much the same thing. Senate bill 2509 adds to the list of offenses for which the evidence of the defendant's prior conduct may be admitted. Let me shift gears in here a second. I think the argument's clear. It's a matter of statutory construction. If we agree with you that the statute applies, then he's got a problem. If for some reason we were to decide the statute doesn't apply, and we go back to the general principles she's trying to argue under the common law case law, where you're given an instruction that's overly broad and perhaps shouldn't have been relevant to the murder, how do you save this? As a general case law, you could fall back to saying this was not reversible error. Well, I think your question moves us to a different issue. The issue we've been talking about, I think, although they're related, is the instructions. Now we're talking about, and it's clear that 115 7.3 applies. There's no doubt about that. Counsel, those that are in the room on that, counsel said, well, the case law that we pointed to, Spires, which cites Jones and some other cases, speak of where there's only one reason that it wasn't proper. I don't think that- You're thinking like MO, intent, motive, identity. Yes. And he said, well, it's only allowable here for propensity, which he, of course, and I want to point out, says, well, that's the catch-all. That's the be-all. That's the big one that we used to not allow because it's so important. And we agree with that. And that's why we think any error in talking about MO and in talking about lack of mistake and in talking about, I'm sorry, the other one escaped. Yeah, what was harmless. But it's not just one. It's not just propensity because they didn't, it was also allowed for intent, which I think it's clearly relevant to. And so there's two. There's both propensity and there's intent. And intent is, in a superficial way, in a layman's way, I think very analogous to MO and very analogous to lack of mistake because what we're talking here is, why was it done? It's not just like, oh, well, oh, I mistakenly fell on her or touched her vagina or something like that. But if consent was his defense, why is lack of mistake relevant? Lack of mistake may not be. I agree for purposes of MO, Your Honor, that there probably wasn't enough here. Although there can be a compelling argument made that you have three of these in the same area. You have the person always beating a person. Now, several times it was beating one. At least it was forcing down to the ground, taking them off the street, a stranger, into a nearby area to have sex with them. That may be sufficient. He says, well, but MO can only be for identity. But let's assume for a second the argument, it was admitted some of these purposes were inadmissible or improper. How do you save the case under the common law? What's your argument? Why is it not reversible error? Well, it's not under the common law, Your Honor. This court said in Walston that there's a difference between admission under the common law and admission under the new statute. Your Honor, I'm talking about if the statute doesn't apply to the murder charge. Isn't that what he's been arguing? You can't have the murder charge. He doesn't have any prior murder convictions. Therefore, it shouldn't have been admissible to prove the murder. Is there a way that you would be able to save the case if he's right? Well, our argument would be under the common law decisions. Well, then we would fall back upon the briefed issue that we said, which was that in this case, because although it did say the crime, instead of saying the sexual assault, one did refer to that. And the people argued it quite clearly to the jury only with regard to the sexual assault. Our position. You say that would have cured any alleged error? Is that the position? I'm sorry. It would have cured any alleged error? Uh, in the instructions, yes. Because the people only set out, the people only offered to the jury that it was allowed. They only argued that it was to be allowed for the sexual assault. That's all they argued at the trial? Yes, to the jury. Yes. And we closed it. All right, let me go back to the first issue. He has a logical point. He's saying that the state can't have it both ways. The state moved in Limonene to exclude evidence of the victim's provocative, if you will, inappropriate behavior, suggestive behavior at the nursing home. Correct? That was the state's motion. It was granted. Yes. So he's saying the state can't have it both ways. That was granted, and then they tried to use it as a shield then in the closing argument. They shouldn't have brought it up at all. Well, one of the arguments we set forth in our brief was that it was invited air. Counsel came out and said, well, why would, uh, defense counsel said, you know, we, we know that people have sex all the time with strangers and just, you know, consensual sex and this and that. And in response to that, we said, well, they brought up this person that talked about what type of person she was, how well dressed she was, that she was married. And that tells you that she's not the type of person who would just go out willy nilly and have sex with a total stranger, uh, that was invited. And our argument again is based upon the distinction between this case and Dagger, Harris and I'm assuming which was kept out. Was that this is not the case here. This evidence, I agree that if we had kept out evidence that she once was found under a bush in a park, having sex with someone half her age, that we could not then have made the argument we did. But this is not the case. This is some amorphous thing that when we brought it in and we made the motion, they did not say, oh, well, this is why it's important because they, they didn't bring out, uh, further evidence of exactly what the words were, exactly what she was doing, exactly how she was running or putting her legs up and stuff. Why was the motion even created in the first place? I mean, if somebody is dancing proactively in a club somewhere, would you make a motion? I mean, what she did in nursing home wasn't really sexual conduct or sexual activity, was it? Uh, I would say that it probably wasn't. Although when you're talking about if the, if the statute talks about sexual reputation and you have this person saying, well, she was acting sexually inappropriately, which again is a subjective matter, but the people clearly got wind of the fact or felt that they were, that the defense was going to try and dirty up the victim by saying this. Our feeling is that maybe the court is right, that it's really isn't the type of thing that the rape shields statute is designed to prevent. But that's my question. If the court grants the motion improperly and it shouldn't have been granted in the first place because it's simply irrelevant for any purpose on a rape shield or not, is that error? In other words, the court granted it for the wrong reasons. Well, I would argue that as you said before, Justice Hudson, you can affirm for any reason and I think you're simply irrelevant. And in that regard, I would cite you to page 405 of the record where the trial judge ruling on it says, and I have a quote here. These are not my notes. These are Matt's notes, but I have quotes on this under the evidence that I do have. I do think that this evidence would not be relevant to any aspect of this case. So while we brought a motion on the rape shield, the judge mentioned that this just isn't relevant. That's my thought. And, and at that time, again, as I said in our accent that there wasn't even a consent defense at that time. Well, I still think the prosecutor is wise in making the motion anyway. I guess I've said, I think you have no further questions. I'm going to ask you to affirm the findings and convictions and sentences for them. Thank you, Mr. Hoffman. Thank you, Your Honor. Mr. Hoffman. So maybe we're overlooking the link between sex crimes and murder involving sex, and maybe the state is overlooking the relevancy requirement. There is a relevancy requirement in 115.7.3, even though the statute says, well, here's a list of crimes the defendant's accused of. Here's a list of crimes the defendant did in the past. Those are admissible. But that brings me back to my question when you were up here initially. Isn't it relevant that this man had, you have three other crimes witnesses come in. I think two of the three he had struck. The one gal I think was passed out when the police got there. Correct. The other one he had hit in the head or beat and had sexual assault with two of them. How is it not relevant that this woman was beaten pretty badly and sexually assaulted? I think the state could argue this shows he has a propensity to commit violence during sexual assaults. That's fine. But murder's a bit of a step up. Well, isn't it? Murder is a battery where you have a death, basically. So it just so happened that he battered this woman. It just so happened she died. How is, how would this not be relevant? I think because the question is, does this defendant have a propensity to kill the women that he sexually assaults? I think you're reading the statute over broadly. It says if the defendant is accused, accused of murder, when the commission of the offense involves sexual conduct, you have the defendant accused of murder, you have evidence of sexual conduct, and you have evidence of the prior sexual convictions. It almost seems like you're saying that unless the person has been convicted of murder before or charged with murder before, the statute could never come in. Otherwise, what do you make of the phrase when the commission of the offense involves sexual conduct? What does that mean to you? We're not arguing it doesn't come in. We agree the types of crimes have been expanded by the two amendments in the statute. Our argument is the types of crimes have been expanded, but not the purpose for which it is admitted. If Mr. Johnson had murdered one of his prior victims during a criminal sexual assault, that would come in for both propensities. But isn't this under the section of other crimes evidence, admissibility of other crimes evidence? It is, but again, it has a relevancy requirement. Think about what relevancy. So we're back to, how is it not relevant that he beat two other women and sexually assaulted them? And in this case, he beat this woman and the state is alleging sexual assault. We're not arguing the prior crimes don't come in. Clearly, they come in under the statute. Not a problem. The question is, what is the jury told about how to consider them? They can consider them, we concede, on his propensity to commit violent criminal sexual assaults. That's fine. But does he have a propensity to commit murder? I don't think, logically, you can say that it does, because they're not relevant for that specific purpose. And the statute does have a relevancy requirement. And I think the fact that we're debating the meaning of this means that if it's vague, if it's ambiguous, if there are two possible outcomes, this statute's an abrogation of the common law. And it has to be narrowly construed in our favor. And I think it's as important, as I said in my opening argument, even after the statute was amended in 2011, the court decided ward, and again said, reaffirming Donahoe, this comes in for propensity to commit sexual assaults. I don't think, on the other issue, the state is right that it was invited. Because when the state got up in its opening closing argument, they argued the evidence shows beyond a reasonable doubt that VF did not consent to sex. So defense counsel got up and said, well, you know, random acts of sex in our society happen. They're rare. They may not be everybody's cup of tea. But they do happen. And we argue that this was consensual sex. Well, that argument may have invited a response from the prosecution and rebuttal that random acts of sex don't happen on outdoor porches and random consensual acts of sex don't involve the woman being beaten. Those arguments would have been invited. But what counsel didn't invite was the argument that this person, VF specifically, would not have consensual sex with a stranger because they kept out evidence, whether rightly or wrongly. And the case law, Justice Hudson says, if the state manages to exclude evidence, they can't argue the opposite and ask the jury to come to a different conclusion. So whether right or wrong, that's what happened here. I think, you know, we understand the defense had an uphill task in this case, obviously. May I finish my point? Yes. They had to convince the jurors that this middle-aged married woman had consensual sex with Edward Johnson, a total stranger, and that after she and he had consensual sex, someone else came along and murdered her. That's an uphill battle in this case. But any chance that the defense had at a fair trial in this case was undermined and negated by the two prejudicial layers that we've argued. The consent defense to the sexual assault charge was improperly undermined by the prosecutor's closing argument, arguing the opposite of what they had successfully excluded. And the alibi defense to the murder charge, such as it was, Justice Spence, because he was arrested nine months later, so I don't think any of us can remember what we were doing nine months ago, and the jurors were instructed on consent and the defense was allowed to argue alibi. The alibi defense to the murder charge was undermined by the erroneous limiting instruction. So you had these two very difficult defenses where the defense had an uphill battle, both of which were improperly undermined by prejudicial errors. And because those errors alone or in combination deprive Mr. Johnson of a fair trial, we'd ask that this Court reverse his convictions and remand him for a new trial. And I'd like to make just one more point, which is, even if you buy the State's argument on 115.7.3 and you hold that the statute does allow the broad interpretation, it doesn't apply in this case because the State never asked a trial that it be admitted for that purpose, and the Court never did admit it for that purpose. So I think it would be unfair to retroactively say, well, it could have happened, and so we're not going to find that Mr. Johnson was prejudiced. And if the Court has no questions, I thank you for your time. Okay. Thank you, Mr. Hawthorne. Thank you, Mr. Hawthorne. All right. The Court will now stand in recess. The decision will be rendered in due course.